CAPITOL LIFE INSURANCE
COMPANY, Plaintiff,

v.

Lynn G. PORTER, Defendant-Appellant,

and

Theresa Porter, Defendant-Respondent.

No. 50535.

Missouri Court of Appeals,
Eastern District.

Sept. 30, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 29, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Daniel T. Glowski, Clayton, for defendant-appellant.

Gregory D. O'Shea, Lemay, for defendant-respondent.

CRANDALL, Judge.

James A. Porter (insured) was issued a life insurance policy by the Capitol Life Insurance Company (insurer). The insurer's records listed Lynn G. Porter, insured's wife, as beneficiary under the policy. After the insured's death, a change of beneficiary form was found among his personal belongings. The form designated Theresa Porter, his mother, as the new beneficiary.[1] Theresa Porter and Lynn S. Porter both claimed that they were entitled to the proceeds of the insurance policy. Insurer interpled the proceeds to the court and was discharged. Lynn Porter (wife) appeals from the judgment of the trial court, in a court-tried case, awarding the proceeds to Theresa Porter (mother). We affirm.

The record reveals that the insured was thirty-three years of age when he died. Prior to his death, he worked as a custodian for a school district in St. Louis County and also served in the United States Naval Reserve. He was issued a life insurance policy in the amount of $10,000 on which his wife was named as beneficiary. She and insured separated in December, 1982, after she brought an action for dissolution of their marriage. On December 20, 1982, insured executed a change of beneficiary form on which he designated his mother as the new beneficiary under the policy. The application was signed by the insured and witnessed by a family friend. The insured told his mother and the witness that he was changing the beneficiary on his policy because of the pending dissolution action. He also said that he was going to mail the form to the insurer.

At that time, the insured had been experiencing chronic pain and weakness in the upper left side of his body and, to a lesser extent, in his right arm. In fact, the insured had directed his mother to print her name on the beneficiary form because it was too painful for him to write.

From January 14, 1983 until January 28, 1983, insured was on active duty in the Naval Reserve in San Diego, California. Shortly after his return home, he entered the hospital. His illness was diagnosed as cancer. In March, a "forequarter" amputation was performed on the insured in which his left arm, shoulder, and part of his chest were removed. After his release from the hospital in May, 1983, he went to live at his parents' home.

From that time on, the insured was confined to a wheelchair. Five days a week, his father drove him 60 miles, one-way, to the hospital for radiation therapy. His muscle strength and physical condition were deteriorating rapidly. He needed assistance in performing all the basic bodily functions. He was fed and carried about by his parents. Characterized as a "slow learner" prior to his illness, he became even more "vague" as his physical condition got worse. In May, his parents and some friends drove the insured to Connecticut, a trip he wanted to make before he died. The insured died on June 2, 1983.

Throughout his illness his wife did not help care for him. She was not with him when he died and did not attend his funeral.

After his death, his parents found the completed change of beneficiary form among the insured's personal effects which he had stored in their basement during his illness. His mother forwarded the form to the insurer and filed a claim for the proceeds of the policy. Wife also filed a claim. Faced with conflicting claims, the insurer brought this interpleader action.

The trial judge awarded the proceeds of the insurance policy to the insured's mother. The court found that the insured had "substantially complied with the conditions imposed by the policy" and that the "circumstances concerning his illness [had] prevented him from forwarding the form to the insurance company."

---

1. The policy in question reserved the right in the insured to change the beneficiary of the policy at any time prior to his death. It did not require the consent of the company. As such the policy does not confer vested rights in the beneficiary prior to the insured's death. *See Postal Life and Casualty Ins. Co. v. Tillman,* 287 S.W.2d 121, 125–26 (Mo.App.1956).

Wife raises four points on appeal. She first contends that the trial court erred in awarding the policy proceeds to the mother because the insured did not do all within his power to exercise his right to change the beneficiary. The salient issue is whether the insured's acts constituted sufficient compliance with the change of beneficiary clause so as to effectuate a change in beneficiary.

Preliminarily, we note that this is not an action at law. It is not a suit on the contract between a claimant and the insurer, in which the failure of the insured to strictly comply with the terms of the contract *might* prevent the change in beneficiary from becoming effective. The terms regulating the manner in which a beneficiary can be changed are primarily for the benefit of insurers, to protect them against multiple liability from conflicting claimants. *Provident Life and Accident Ins. Co. v. Buerge*, 703 S.W.2d 590, 593 (Mo. App.1986). Here, the insurer proceeded by interpleader and paid the proceeds of the policy into court. By so doing, the insurer waived strict compliance with the method of recording notice of the change upon the policy and upon its books and records. *Id.; Persons v. Prudential Ins. Co. of America*, 233 S.W.2d 729 (Mo.1950). The insurer merely acknowledged its liability to someone and otherwise stood indifferent to the outcome.

This waiver by the company, however, is simply a waiver as to itself and does not act to confer rights as between the claimants. Although a beneficiary under this type of policy does not have any vested rights during the life of the insured, the right to the proceeds becomes vested upon the death of the insured. *St. Louis Union Trust Co. v. Blue*, 353 S.W.2d 770, 779 (Mo.1962). Because of this vesting of rights, it is important to understand how a court of equity can allow a substitution of a beneficiary where the insured has not strictly complied with the terms of the policy necessary to effectuate a change in beneficiary.

In Missouri, the equitable doctrine of substantial compliance prevails and is applicable where the insured has not strictly complied with the method provided by the policy for changing the beneficiary. If the insured has done all within his power to exercise his right to change the beneficiary, the irregular or incompleted change is effective as against the original beneficiary. *Woodman Accident and Life Co. v. Puricelli*, 669 S.W.2d 64, 65 (Mo.App.1984). Equity regards as done that which ought to be done. *Postal Life and Casualty Ins. Co. v. Tillman*, 287 S.W.2d 121, 127 (Mo. App.1956). The doctrine of substantial compliance simply carries out the intent of the insured. The insured's intention, however, must be established beyond question; and the insured must have done everything possible under the circumstances to effectuate his intent. Equity recognizes that the change of beneficiary was effective during the life of the insured, so that no vested rights of the original beneficiary are defeated. *Postal Life*, 287 S.W.2d at 127.

The parties do not question that substantial compliance is the law. Their disagreement focuses on the application of the facts to the law. The issue then becomes one of evidence; namely, was there substantial evidence to support the trial court's determination that there was substantial compliance with the policy provisions to effect the change in beneficiary.

Wife contends that, since the insured never mailed the form, he did not do all within his power to exercise his right to change the beneficiary. She relies on several cases to support this argument. In *Persons*, 233 S.W.2d at 729, the insured mailed the change of beneficiary form, but died while the form was in transit. In *Woodman*, 669 S.W.2d at 64, the executed forms were delivered to the insured's agent who did not forward them to the insurer until after the insured's death. The unique facts of the present case make it distinguishable from either case cited by the wife.

It is axiomatic that what constitutes substantial compliance will vary with the cir-

cumstances of each case. Here, the insured did not comply with the strict terms of the policy. He did, however, take a number of positive steps to effect the change of beneficiary. He obtained the correct change of beneficiary form, executed the form properly and in the presence of a witness, explained to his mother and the witness why the change was being made, and expressed his intent to forward the form to the insurer. *See, e.g., Connecticut General Life Ins. Co. v. Gulley*, 668 F.2d 325, 327 (7th Cir.1982), *cert. denied*, 456 U.S. 974, 102 S.Ct. 2237, 72 L.Ed.2d 848 (1982). The only further step needed to complete the change of beneficiary would have been for the insured to mail the executed form to the insurer.

In *Gulley*, the insured executed a change of beneficiary form, making his daughter the beneficiary of a group life insurance policy issued to his employer. He left the form with his daughter, saying that he would return to get it and deliver it to his employer. He did not direct his daughter to mail the form for him. One week later, the insured suffered a fatal heart attack. Two days after his death, his daughter mailed the form to insured's employer and claimed the proceeds of the policy. The United States Court of Appeals, Seventh Circuit, found that there was substantial compliance with the terms of the insurance policy. *Id.* at 327–28. Although there were "no unusual circumstances" that prevented the insured from delivering the form to his employer, the court held that "[w]here insured takes a positive action which evidences his obvious desire for a change of beneficiary, the courts will adopt such construction as will assist in carrying out such intention." *Id.* at 328 (citations omitted).

In the present case, the evidence and all the reasonable inferences therefrom indicate that there were unusual circumstances which prevented the insured from mailing the change of beneficiary form to the insurer and which distinguishes this case from either *Woodman* or *Persons*. The insured was a "slow learner" who became progressively vague as his health deteriorated.

He was subjected to a debilitating operation which resulted in the amputation of his left arm and entire shoulder. He underwent radiation treatments on a daily basis for approximately one month. His illness and the prescribed treatments left him physically and mentally spent and totally dependent upon his parents. His condition steadily declined until his eventual death.

We also note that none of the evidence in this case militates against giving effect to the change of beneficiary form executed by the insured. There was no hint of fraud or duress in the execution of the form. There was no indication that the insured changed his mind during the time between the execution of the form and his death. The record reveals that the insured intended to change the beneficiary on the policy to his mother, who cared for him until his death, rather than his wife, who had brought a dissolution of marriage action. Given the unique circumstances of this case, the insured had done everything reasonably within *his* power to effectuate the change. Wife's first point is denied.

■ Wife's second point alleges error in the trial court's admission of evidence pertaining to the insured's subjective intention to change the beneficiary of the policy and evidence as to the marital status of the insured. The trial court overruled wife's motion in limine to prevent the admission of this evidence. At trial, however, wife did not renew her objection when such evidence was introduced. After a denial of a motion in limine, a timely objection is required to preserve the point for appellate review. *Peters v. Henshaw*, 640 S.W.2d 197, 201 (Mo.App.1982). Absent such an objection, wife has not preserved any error for our review. Wife's second point is denied.

In her third point, wife asserts that the trial court's ruling is against public policy because it "extends the substantial compliance rule far beyond all precedent." Wife's fourth point charges error in the trial court's ruling because it did not determine whether the insured did everything in

his power to effectuate the change of beneficiary. In view of our holding on Point I that there was substantial compliance to effect a change in beneficiary, an extended opinion on Points III and IV is not warranted. Rule 84.16.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.