**Harry J. ANGLEN, Appellant,**

v.

**Elizabeth HEIMBURGER and Homer
Whitaker, Jr., Respondents.**

**No. WD 43035.**

Missouri Court of Appeals,
Western District.

Dec. 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied
March 5, 1991.

Mitchell J. Moore, Columbia, for appellant.

William Gay Mays, II, Columbia, for respondents.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

This appeal is from an interpleader action wherein appellant, Harry J. Anglen, and respondents, Elizabeth Heimburger and Homer Whitaker, Jr., all claimed to be entitled to life insurance and pension benefits payable upon the death of Elizabeth Whitaker. Appellant is the former husband of Elizabeth Whitaker and respondents are her parents. The life insurance and pension benefits were payable by Principal Mutual Life Insurance Company (Principal Mutual). Principal Mutual paid the total amount in controversy, $32,392.70, into court and was dismissed from the cause.

Harry Anglen claimed to be entitled to the funds by virtue of his being the named beneficiary on both the life insurance and pension policies. Respondents claimed that their daughter had substantially complied with the requirements to change the beneficiary of her policies from Harry Anglen to them prior to her death. The trial court ruled in favor of respondents and Harry Anglen appeals.

In his first point on appeal, appellant argues that the trial court erred by allowing hearsay statements of the decedent, Elizabeth Whitaker, to be received in evidence. Respondents argue that Elizabeth Whitaker's hearsay statements were admissible under the provisions of § 491.010, RSMo 1986.[1]

Section 491.010 replaced what was previously known as the deadman statute. Although the current version of the statute,

1. All statutory references are to RSMo 1986.

as adopted in 1985, proclaims in its title portion to be the abrogation of the deadman statute, this section is still commonly referred to as the deadman statute. Section 491.010 provides as follows:

1. No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility.

2. In any such suit, proceeding or probate matter, where one of the parties to the contract, transaction, occurrence or cause of action, or his agent in such matter, is dead or is shown to be incompetent, and the adverse party or his agent testifies with respect thereto, then any relevant statement or statements made by the deceased party or agent or by the incompetent prior to his incompetency, shall not be excluded as hearsay, provided that in trials before a jury, the trial judge shall first determine by voir dire examination out of the hearing of the jury that the declarant would have been a competent witness and that his alleged statement or statements would have been admissible in evidence if he were available to testify.

3. The provisions of this section shall apply to all trials commenced after September 28, 1985.

At the trial herein, Harry Anglen was present in person, but was not called as a witness. Anglen's counsel presented evidence on behalf of Anglen's claim to the funds in question. Anglen's evidence showed that at the time of Elizabeth Whitaker's death Harry Anglen was the beneficiary of record on her life insurance and her pension policies.

Counsel for respondents then presented evidence in support of their claim to the funds. At the beginning of the respondents' evidence, the deposition of Harry Anglen was offered. Appellant objected on the basis of relevancy, which objection was overruled. Appellant does not allege that the court erred by finding his deposition testimony relevant and he made no

further objection to the admission of his deposition. The question arises as to whether the admission of appellant's deposition allowed hearsay statements of Elizabeth Whitaker to be admitted in evidence pursuant to the provisions of § 491.010.

█ Generally, a deposition is not to be read in evidence when the deponent is present, except as an admission against the deponent's interest or to impeach his testimony. *Oventrop v. Bi–State Development Agency*, 521 S.W.2d 488, 494 (Mo. App.1975); Rule 57.07. Appellant did not object to the introduction of his deposition on the basis of his presence in court. He also did not request that his deposition testimony not act as a waiver of any objection that he would otherwise have to hearsay statements of the decedent, Elizabeth Whitaker. Although appellant did not take the witness stand in person, he allowed his testimony to be received in evidence without appropriate objection.

█ The matter before the court was a proceeding in equity, interpleader, to determine the rights of rival claimants, appellant and respondents, to the life insurance and pension benefits payable upon the death of Elizabeth Whitaker. The insurance company from which the benefits were payable, Principal Mutual, had paid the funds into court. The proceeding became one to interpret who Elizabeth Whitaker intended to benefit upon her death. When appellant allowed his testimony to be received in evidence, without proper objection, the out of court statements of Elizabeth Whitaker, the deceased party to the transaction at issue, became admissible against him. § 491.010.2.

Appellant's first point is denied.

In his second point, appellant argues that the trial court erred by finding that respondents should be declared beneficiaries of Elizabeth Whitaker's life insurance and pension policies because the respondents did not prove by substantial and competent evidence that Elizabeth Whitaker had done all within her power to change beneficiaries prior to her death.

◼ The standard of review in suits of an equitable nature is that the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo banc 1976).

◼ Missouri recognizes the equitable doctrine of substantial compliance to carry out the intent of an insured where the insured has not strictly complied with the method provided by an insurance policy to change the beneficiary. The equitable doctrine of substantial compliance makes an incomplete or irregular change of beneficiary effective against the original beneficiary where the insured has done all within his power to exercise his right to change the beneficiary. *Capitol Life Insurance Company v. Porter*, 719 S.W.2d 908, 910 (Mo.App.1986). The doctrine carries out the intent of the insured and the insured must have done everything possible under the circumstances to effectuate his intent. *Id.*

In the case at bar, the evidence was that appellant and Elizabeth Whitaker were married in January of 1981, separated in July of 1985, and that their marriage was dissolved on August 4, 1986. After their separation, appellant moved from Missouri to Arizona and did not see Elizabeth Whitaker again.

Elizabeth Whitaker was hospitalized at the time of her separation from appellant, for a hysterectomy operation. It was discovered that she had Hodgkins' disease and she began chemotherapy for her cancer in August of 1985. Elizabeth Whitaker underwent extensive chemotherapy and radiation treatment for her cancer and was never able to return to work after her hysterectomy.

During the course of her illness Elizabeth Whitaker sometimes lived with her mother in Texas and sometimes by herself in Columbia, Missouri. Elizabeth Whitaker's mother, Elizabeth Heimburger, provided in excess of $30,000 for her daughter's financial support during her illness.

Appellant provided no financial support to Elizabeth Whitaker during her illness.

During the course of Elizabeth Whitaker's illness she became progressively weaker and more gravely ill. In spite of the fact that she was seriously ill at the time, Elizabeth Whitaker took the steps necessary to have her marriage to appellant dissolved in the summer of 1986. She also had her maiden name of Whitaker restored in the dissolution proceeding.

Elizabeth Whitaker was hospitalized on numerous occasions during the course of her illness. Her mind remained sharp until the end of her illness, but there were days when she was so sick that she was not able to concentrate, remember things or pay attention to what she was doing. Her chemotherapy at times caused memory problems. Elizabeth Whitaker required assistance from others during the course of her illness and in her final few months of life, she was unable to care for herself. During these final months, Elizabeth Heimburger left her medical practice in Texas and moved to Columbia, Missouri, to be with her daughter and care for her in order that her daughter could remain close to her circle of friends.

During the course of her marriage to Harry Anglen, Elizabeth Whitaker designated him as the beneficiary of the life insurance and pension policies provided by her employer. At the time of her separation from appellant Elizabeth Whitaker requested a change of beneficiary form from her employer. A year later, in the summer of 1986, when Elizabeth Whitaker was discussing her disability benefits with a representative of Principal Mutual, she was advised that Harry Anglen remained as beneficiary of her policies. Elizabeth Whitaker indicated that she needed to change her beneficiary and requested another change of beneficiary form which was delivered to her.

Elizabeth Whitaker expressed a desire to get Harry Anglen out of her life. She advised her mother, her attorney and close friends that she had changed her beneficiary from Harry Anglen to her parents, the respondents herein. One such conver-

sation took place with a friend as Elizabeth Whitaker contemplated her death.

After Elizabeth Whitaker's death, on November 1, 1986, the envelope that had been sent to her by her employer which had contained a change of beneficiary form, a pre-addressed envelope and written instructions was found among her personal papers. The change of beneficiary form and pre-addressed envelope were missing and not able to be located. Principal Mutual had no evidence of having received the same.

■ The evidence herein supported the trial court's application of the equitable doctrine of substantial compliance. Elizabeth Whitaker did not see Harry Anglen after their separation and she received no financial or moral support from him during what was known to be a serious and resulted in being her last illness. In spite of her serious illness, Elizabeth Whitaker proceeded to make the effort to dissolve her marriage and have her maiden name restored. She expressed to others that she wanted Harry Anglen out of her life. Elizabeth Whitaker relied chiefly on her mother for financial and moral support in her time of crises. Elizabeth expressed to others, as she contemplated her own death, that she wanted her parents to benefit from her insurance.

Elizabeth requested and obtained the form necessary to change her beneficiary and expressed to those close to her that she had taken the steps necessary to change her beneficiary from Harry Anglen to her parents. It is clear from the evidence that this was as she wanted.

The evidence and all reasonable inferences therefrom indicate that there were unusual circumstances which prevented Principal Mutual from receiving Elizabeth Whitaker's change of beneficiary form. She requested and received the form. The form and return envelope were not with the original envelope in which they were delivered, although the original envelope was among her personal papers. She became dependent upon others to care for her and do things for her that her illness precluded her from doing herself. Her mind was clear until her death, but her illness and drug therapy caused her at times to have memory lapses and not be able to concentrate. There was no indication of anything other than resolve on the part of Elizabeth Whitaker to change her beneficiary and she believed that she had done so.

Elizabeth Whitaker's intention to change the beneficiary of her life and pension policies was established by competent and substantial evidence. Given the circumstances and condition of Elizabeth Whitaker, it was not error for the trial court to find that she did all within her power to change her beneficiary from Harry Anglen to her parents.

The judgment of the trial court is affirmed.

All concur.