# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1794

_____

| | | |
|---|---|---|
| The Prudential Insurance Company of America, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Mary Beth Kamrath, | * | District Court for the |
| | * | Eastern District of Missouri. |
| Defendant - Appellee, | * | |
| | * | |
| Sharri Kamrath Rocca, as Personal | * | |
| Representative of the Estate of | * | |
| Bradley G. Kamrath, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 20, 2006
Filed: February 1, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The Prudential Insurance Company of America filed this interpleader action to resolve competing claims to the proceeds of Bradley Kamrath's life insurance policy.

Following a bench trial, the District Court[1] held that Mary Beth Kamrath is entitled to the proceeds because she is the named beneficiary on the policy. The District Court found that Bradley Kamrath's efforts to change the policy beneficiary did not meet the requirements for application of the substantial-compliance doctrine. We affirm the judgment of the District Court.

On August 1, 1989, Prudential issued Bradley Kamrath a group life insurance policy that insured his life in the amount of $500,000.00. This policy designated Bradley's wife, Mary Beth, as the primary beneficiary. In 1994, Bradley and Mary Beth began experiencing marital difficulties. In 2002, these problems escalated, prompting Bradley to move out of the couple's home on December 13, 2002. Shortly thereafter, Mary Beth obtained a protection order that restricted Bradley's contact with the couple's children, and Bradley fired Mary Beth from the couple's CPA firm. Bradley filed for divorce on December 31, 2002. During the dissolution proceedings, the couple shared custody of their oldest child while the two younger children regularly visited Bradley.

Bradley met with attorney John Williams on March 6, 2003. Williams testified that Bradley asked him to draft several estate-planning documents, including a testamentary trust for the children's support that would be funded by the policy proceeds. In a letter dated March 31, 2003, Williams requested a change-of-beneficiary form from the policy administrator, Aon Insurance Services. On April 3, 2003, Bradley brought a policy-assignment form to Williams's office. Williams testified that the form appeared to be a change-of-beneficiary form, although Williams knew the assignment form could not have been sent in response to his March 31 letter on account of the short passage of time. Bradley executed the assignment form next to the words "Signature of Assignee," and Williams witnessed the execution. App.

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

at 16. Bradley wrote, "Estate of the Insured," in the space for the assignee's primary beneficiary designation. Id. Bradley also executed a last will and testament that named his sister, Sharri Kamrath Rocca, as personal representative of his estate and trustee of the testamentary trust. Williams testified that Bradley left the completed assignment form with Williams and that Williams gave the form to his secretary to mail. Williams also testified that he advised Bradley to watch for an endorsement confirmation from Aon. In a letter to Aon dated April 4, 2003, Williams wrote, "Enclosed please find a change of beneficiary form for the above policy of insurance. Please endorse this change on your records and confirm the endorsement to the insured." Id. at 15. Williams had no further contact with Bradley or Aon before Bradley's death.

Thomas Fremont, an Aon manager, testified that Aon never received the assignment form and that even if it had received this form, Aon would not have accepted it as an effective change of beneficiary. Fremont testified that the assignment form typically came with two pages of instructions that explained the effect of transferring ownership of the policy. Fremont also testified that Aon received Williams's March 31 letter requesting a change-of-beneficiary form and that Aon sent Bradley the form on April 7, 2003. Aon never received a completed change-of-beneficiary form from Bradley.

Bradley's mother, Rose Kamrath, testified that in February 2003, Bradley told her that he was going to change the beneficiary of his life insurance policy to his children. Rose also stated that in April 2003, Bradley told her, "I changed my insurance policy over to the children." Rose Kamrath Dep. at 17–18.

Mary Beth testified that she approached Bradley in July 2003 to inquire about changing the beneficiary on her life insurance policy. Bradley told Mary Beth that neither spouse could change a beneficiary until after the divorce was complete.

Bradley committed suicide on September 27, 2003. Bradley left four typed letters to family members, including one to Mary Beth, in which he wrote, "I'm not sure how the disbursement of life insurance will work; my intent is that it all goes into the trust that will be managed by Sharri, for the benefit of [the children]. If it cannot go into the trust directly, pay off all the debt . . . PLEASE place that money in the trust." App. at 138. Bradley left an additional note to Mary Beth concerning his estate, in which he wrote, "My life insurance policies . . . are to go into a trust for the benefit of my children." Id. at 144. Bradley wrote to his parents, grandparents, and Sharri, "There should be about 520K in insurance, all of it is supposed to go into the trust that is for the kids. Mary Beth may have to pay some debts off before the money can go into the trust. Please make sure the remainder gets there." Id. at 141.

On October 9, 2003, Williams sent a letter claiming the policy proceeds on behalf of Bradley's estate. Aon responded that Mary Beth was the beneficiary and that it had not received a form designating the estate as the beneficiary. On October 27, 2003, Williams faxed Aon a copy of the April 3 letter and assignment form. Meanwhile, Mary Beth had filed a claim for the policy proceeds on October 20, 2003. This interpleader action followed.

The District Court found that Bradley "failed to do all within his power to substantially comply with the policy requirements for changing his beneficiary," and therefore, it would "not exercise its equitable power to change the beneficiary of Mr. Kamrath's Prudential insurance policy." Mem. of Feb. 26, 2006, at 24. We review the District Court's findings of fact for clear error, giving "due regard" to the court's credibility determinations. Fed. R. Civ. P. 52(a). We review the District Court's conclusions of law de novo. Tadlock v. Powell, 291 F.3d 541, 546 (8th Cir. 2002).

Before addressing the merits of this case, we note there is a question of whether Missouri or New York law applies to this action. The District Court held that a policy provision designating New York as the "governing jurisdiction" was inapplicable

because this case does not involve the interpretation of any policy provision. Mem. of Feb. 26, 2006, at 18. The District Court then determined that Missouri law should apply because Missouri has the most significant relationship to this case. Id.; see Sheehan v. Nw. Mut. Life Ins. Co., 44 S.W.3d 389, 396 (Mo. Ct. App. 2000) (stating that Missouri applies the "most significant relationship" test when resolving choice-of-law issues in contract cases).

A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists. Surgidev Corp. v. Eye Tech., Inc., 648 F. Supp. 661, 679–80 (D. Minn. 1986), aff'd, 828 F.2d 452 (8th Cir. 1987). We need not decide whether Missouri law or New York law applies in this case because the outcome would be the same under either law. See, e.g., McCarthy v. Aetna Life Ins. Co., 704 N.E.2d 557, 560 (N.Y. 1998).

By filing an interpleader action to resolve competing claims, an insurer waives strict compliance with policy terms directing how to change a beneficiary. John Hancock Mut. Life Ins. Co. v. Dawson, 278 S.W.2d 57, 61 (Mo. Ct. App. 1955); McCarthy, 704 N.E.2d at 561. Under both Missouri and New York law, a court may apply the equitable doctrine of substantial compliance to carry out the insured's intent where the insured has not strictly complied with the policy terms prescribing how to change a beneficiary. Anglen v. Heimburger, 803 S.W.2d 109, 112 (Mo. Ct. App. 1990); McCarthy, 704 N.E.2d at 560. As a general rule, this doctrine makes an incomplete change of beneficiary effective against the original beneficiary. Anglen, 803 S.W.2d at 112 (citing Capitol Life Ins. Co. v. Porter, 719 S.W.2d 908, 910 (Mo. Ct. App. 1986)); see McCarthy, 704 N.E.2d at 560–61.

In order to apply the doctrine in Missouri, the insured's intent must be established "beyond question." Porter, 719 S.W.2d at 910. Additionally, "the insured

must have done everything possible under the circumstances to effectuate his intent." Id. Stated another way, the insured must have done "all within his power to exercise his right to change the beneficiary." Id. (citing Woodman Accident & Life Co. v. Puricelli, 669 S.W.2d 64, 65 (Mo. Ct. App. 1984)). Accordingly, in Metropolitan Life Insurance Co. v. Barnes, 770 F. Supp. 1393, 1397 (E.D. Mo. 1991), the court stated that Missouri's substantial-compliance test contains two elements: (1) the insured's intent to change the beneficiary must be "established beyond question," and (2) the "insured has done everything possible under [the] circumstances."

Under New York law, the "paramount factor" in determining whether application of the substantial-compliance doctrine is warranted is the insured's intent. McCarthy, 704 N.E.2d at 560 (quoting Cable v. Prudential Ins. Co. of Am., 453 N.Y.S.2d 86, 88 (N.Y. App. Div. 1982) (mem. op.)). "Mere intent" alone, however, will not support application of the doctrine. Cable, 453 N.Y.S.2d at 88. Rather, "'[t]here must be an act or acts designed for the purpose of making the change.'" McCarthy, 704 N.E.2d at 560 (quoting Aetna Life Ins. Co. v. Sterling, 224 N.Y.S.2d 146, 147 (N.Y. App. Div.) (per curiam), aff'd, 183 N.E.2d 325 (N.Y. 1962) (mem.)). Therefore, if the insured "has done all that was reasonably possible to do to show his intention . . . or has made every reasonable effort . . . to comply with the policy requirements," then the insured's substantial compliance will demonstrate his intent. Id. (citations and quotations omitted).

The determination of whether the substantial-compliance doctrine should be applied thus involves questions of fact that are reviewed for clear error. See Worthy v. McKesson Corp., 756 F.2d 1370, 1372 (8th Cir. 1985) (per curiam) ("Intent is a question of fact."); Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 565 (4th Cir. 1994) ("Whether the policyholder took steps to effectuate the [beneficiary] change is also a question of fact." (footnote omitted)); see also Zervas v. Zervas, 338 F.2d 299, 302–03 (8th Cir. 1964) (reviewing the district court's finding of substantial compliance under the clearly erroneous standard).

In this case, Bradley did not strictly comply with the policy terms directing how to change a beneficiary. Bradley completed an assignment form rather than a change-of-beneficiary form, and Aon neither received nor endorsed the assignment form. Prudential waived strict compliance with the policy terms, however, by filing this interpleader action. Barnes, 770 F. Supp. at 1397. Accordingly, the issue is whether Bradley's actions warrant application of the substantial-compliance doctrine.

We hold that the District Court's determination that the substantial-compliance doctrine should not be applied is based on fact-finding that is not clearly erroneous. Both Missouri and New York require the insured to do everything reasonably possible to change the beneficiary according to policy terms. We see no clear error in the District Court's finding that Bradley's actions fail to meet this high standard. Notably, Bradley did not mail the required change-of-beneficiary form; instead, he mailed a different form that was ineffective to change the beneficiary. Bradley used the assignment form despite an indication on the form that it was for use in changing owners—not beneficiaries—and despite his receipt of a correct change-of-beneficiary form in response to his attorney's request. Also, Bradley did not confirm with Aon that the beneficiary had been changed, despite his attorney's advice to do so. Especially considering the planning that Bradley undertook prior to his death, it would be difficult to find that he did everything possible when he could have verified with Aon that it had changed the beneficiary. Even Bradley's final notes indicated that he was uncertain whether he had done everything possible: "I'm not sure how the disbursement of life insurance will work." App. at 138.

This case is distinguishable from cases finding that the insured did everything reasonably possible to comply with the policy terms, as "[i]t is axiomatic that what constitutes substantial compliance will vary with the circumstances of each case." Porter, 719 S.W.2d at 910–11. A key distinction here is that Bradley did not suffer from the sort of physical or mental illness that prevented the decedents in other cases from doing more. See, e.g., Anglen, 803 S.W.2d at 113 (applying the doctrine where

-7-

insured's illness and drug therapy made her dependent on others for her care and caused memory lapses); Porter, 719 S.W.2d at 911 (applying the doctrine where insured's illness "left him physically and mentally spent and totally dependent upon his parents"); accord McCarthy, 704 N.E.2d at 561 (declining to apply doctrine and noting that there was no "evidence that decedent was physically or mentally incapable of attempting to substantially comply with the requirements of the policy"). In this case, Bradley had the opportunity to complete the beneficiary change because "he dictated the circumstances of his death." Mem. of Feb. 26, 2006, at 23. Therefore, the District Court's finding that Bradley did not do everything possible under the circumstances to change the beneficiary of his life insurance policy is not clearly erroneous.

We acknowledge that there is compelling evidence indicating that Bradley intended to change the beneficiary, including his: (1) consultation with Williams; (2) turbulent divorce, see Barnes, 770 F. Supp. at 1398 (noting that separation from a spouse may indicate an intent to change beneficiaries); (3) alleged statements to his mother, Rose Kamrath; and (4) statements of intent in his suicide letters. We note, however, that the District Court found the weight of Rose's testimony somewhat diminished on account of her initial failure to disclose the conversation in which Bradley allegedly claimed he changed beneficiaries. Additionally, the suicide letters are ambiguous and may have suggested only a hope that Mary Beth, as beneficiary, would place the policy proceeds in the trust that Williams had created in April 2003.[2] The District Court's finding that Bradley's intent was not sufficiently established is not clearly erroneous.

---

[2]Sharri has argued that Bradley's acts after April 3 are irrelevant in discerning his intent. This position is not consistent with prior cases that examined actions taken after a purported change of beneficiary. See, e.g., Anglen, 803 S.W.2d at 113 (noting that decedent's statements to others that she *had* changed the beneficiary supported application of the doctrine); Cable, 453 N.Y.S.2d at 88 (observing that statement made by decedent after his initial attempt to change the beneficiary demonstrated intent).

Because none of the District Court's findings of fact is clearly erroneous, the judgment is affirmed.

_____