Virginia GLASS, Appellant,

v.

TRANSAMERICA LIFE INS. CO., Third–Party Plaintiff,

v.

Patricia Webb, Respondent.

No. SD 29793.

Missouri Court of Appeals, Southern District, Division Two.

June 4, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied June 24, 2010.

558

W. Edward Reeves, Caruthersville, for Appellant.

Andrew C. Bullard, Kennett, for Respondent.

PAUL McGHEE, Senior Judge.

In 2004, Mrs. Bertha N. Threet (Dixie)[1] obtained a policy of insurance on her life from Transamerica Life Insurance Company (Transamerica) in the amount of $25,000, which she later increased to $50,000. She designated Albert Coleman Threet (Coleman), her husband, as the primary beneficiary, and Patricia Webb (Pat), a sister, as the contingent beneficiary. Coleman died on September 21, 2006, and Dixie died on December 11, 2007.

On February 21, 2007, Dixie signed a Transamerica form requesting a change of beneficiaries which Transamerica received on March 6, 2007. In the request, she named Gena Glass (who is Virginia Glass), a niece, as the primary beneficiary and Nancy Haynes (Nancy), a sister-in-law, as the contingent beneficiary. On March 16, 2007, Transamerica wrote a letter to Dixie stating that it had received the form, but

that her signature must be witnessed by a disinterested party. The letter also stated, "Please sign the enclosed form where indicated by the red (X) and return in the envelope provided. Once the completed form is received, we will update the policy records." Transamerica had no record of the form being returned to it.

In late September 2007, Dixie was diagnosed with cancer. On October 28, 2007, she executed a power of attorney appointing Gena as her attorney in fact, with Nancy as an alternate; and on December 5, 2007, she executed a will leaving all of her property to Gena and naming her as the personal representative of her estate. After Dixie died, Gena applied to Transamerica for the death benefit, as did Pat. When Transamerica did not pay her, Gena filed suit for the death benefit. In response, Transamerica filed an interpleader action as a stakeholder, joining Pat as a third-party defendant, and praying that Gena and Pat be required to litigate their claims for the death benefit among themselves. Pat, in turn, filed a counterclaim for the benefit. Transamerica paid $50,000 and the accrued interest into court, and the court discharged it from further liability on the policy.

The claims of Gena and Pat were tried to the court without a jury. The court rendered judgment in favor of Pat and ordered the clerk to pay her the funds deposited by Transamerica. Gena appeals from the judgment, and she claims in three points that the trial court erred in finding that Pat is entitled to the proceeds of the policy.

As her first point, Gena asserts that the trial court erred as a matter of law in finding that Dixie's attempt to change the beneficiaries was ineffective. She argues

1. For clarity, and not from lack of respect, the court uses the names of the persons involved in the case, who were all related to each other, that the witnesses used at trial in referring to their relatives.

that because Transamerica filed an interpleader action, it waived the policy requirements for the change, so that the change was effective as Dixie substantially complied with Transamerica's requirements by signing and sending the required form to Transamerica.

The policy contains this provision for changing beneficiaries:

**How to Change a Beneficiary**—The owner may change the beneficiary by filing a satisfactory written notice with us. A change of beneficiary will not be effective until recorded by us at our Administrative Office. When recorded, even if you are not then living, the change will take effect on the date the notice was signed, except that any benefits paid before we record a change of beneficiary will not be subject to the change. An irrevocable beneficiary may not be changed without the written consent of that beneficiary.

In *Persons v. Prudential Ins. Co. of America*, 233 S.W.2d 729 (Mo.1950), the issue was whether the insured made an effective change of beneficiary. Prudential paid the amount of the policy into court, and the mother and the widow of the insured litigated between themselves their entitlement to the proceeds of the policy. In 1943, the insured had made his mother the primary beneficiary, and she claimed under that endorsement. On June 10, 1948, the home office of Prudential received from the insured a form furnished by it to him requesting a change of beneficiary to his wife. On June 18, two days after the insured's death, the home office, without knowledge of the insured's death, endorsed the change of beneficiary on the policy. The court held that a change of beneficiary can be accomplished without a strict or complete compliance with the conditions of the policy regarding the endorsement of the insurer, stating the general proposition that a substantial compliance

with the conditions respecting a change of beneficiary is sufficient. *Id.* at 731. The court further held that when the insured had done all within his power to exercise his right to change the beneficiary, the change became effective before his death as the insurer waived its method of recording the change. *Id.* at 733. The court affirmed the trial court judgment for the widow.

In *Gnekow v. Metropolitan Life Ins. Co.*, 108 S.W.2d 621 (Mo.App.1937), Metropolitan had issued its policy upon the life of E.L. Griffin, who named his then wife as the beneficiary. Although he and his wife were later divorced, her name was never removed from the policy and remained on the policy when Mr. Griffin died. The court observed that an insurance company waives a provision in the policy as to a change of beneficiary if it files a bill of interpleader, deposits the money in court, and pleads a willingness to pay the insurance fund to whichever one of the rival claimants the court may decide to be the rightful owner thereof. *Id.* at 625. The court also stated that the waiver was for the benefit of the insurer, and did not benefit the claimant not named as the beneficiary in the policy. *Id.* The court held that there was no competent evidence showing a change of beneficiary, and that the proceeds would go to the divorced wife.

*Bell v. Garcia*, 639 S.W.2d 185, 190 (Mo. App.1982), stands for the proposition that the provisions of an insurance policy governing the manner in which the beneficiary shall be changed are primarily for the benefit of the insurance company and are waived when the insurer interpleads the death benefit proceeds. The court states that the benefit to the insurer is that it is protected against multiple liabilities where two or more conflicting claimants appear.

In *Provident Life and Accident Ins. Co. v. Buerge*, 703 S.W.2d 590 (Mo.App.1986), the insured had designated his wife as the beneficiary. While he was in a hospital, a son brought a designation of beneficiary form to him which he signed designating his three sons as beneficiaries. The form was delivered to a general agent for Provident before the insured's death, but the agent was unsure whether he had forwarded the form to Provident. When the insured died, Provident's records continued to show the wife as the beneficiary. The court stated that the terms regulating the manner of changing the beneficiary are primarily for the protection of the insurer to protect it against multiple liabilities where two or more conflicting claimants appear, and they may be waived by it. *Id.* at 593. The court held that the insured had done everything that he was requested to do, and that since the general agent expressed no dissatisfaction after receiving the form, the wife had no cause for complaint that the strict requirements for the change may not have been strictly adhered to. *Id.* at 594.

In *Capitol Life Ins. Co. v. Porter*, 719 S.W.2d 908 (Mo.App.1986), the insured had named his wife as the beneficiary of his life insurance policy. He and his wife separated in December 1982, after she had filed an action for dissolution of their marriage. That month he executed a change of beneficiary form on which he designated his mother as the new beneficiary. He told his mother and the witness to his signature that he was changing the beneficiary because of the pending dissolution action. He also told them he was going to mail the form to the insurer, but he never did as it was found among his stored personal effects after he died. A short time after he signed the form, he was diagnosed with cancer, and his condition deteriorated rapidly. He went to live with his parents where he was confined to a wheel chair and needed assistance in performing all of the basic bodily functions. His wife did not help care for him, she was not with him when he died, and she did not attend his funeral.

Capitol Life brought an interpleader action, and the trial court awarded the proceeds of the policy to the mother. The court of appeals noted that the insurer waived strict compliance with the method of recording notice of the change upon the policy and its books and records, but the waiver was simply a waiver as to itself and did not confer rights as between the claimants. *Id.* at 910. The court reiterated that the equitable doctrine of substantial compliance prevails in Missouri, and if the insured has done all within his power to exercise his right to change the beneficiary, the irregular or incomplete change is effective as against the original beneficiary. The doctrine of substantial compliance simply carries out the intent of the insured; however, the insured's intention must be established beyond question; and the insured must have done everything possible under the circumstances to effectuate his intent. *Id.* The court affirmed the judgment for the mother, saying that given the unique circumstances of the case, the insured had done everything reasonably within his power to effectuate the change. *Id.* at 911.

*Anglen v. Heimburger*, 803 S.W.2d 109 (Mo.App.1990), was an interpleader action between the former husband and the parents of a deceased insured who all claimed to be entitled to the proceeds of an insurance policy on the insured's life. The trial court ruled in favor of the parents, although the insured had designated her husband as the beneficiary during their marriage. She became gravely ill and requested a change of beneficiary form which was delivered to her, together with a pre-addressed envelope and written instructions. She told people that she had

changed her beneficiary from the former husband to her parents. After she died, the envelope in which the documents were sent to her was found among her personal papers, but the change of beneficiary form and pre-addressed envelope could not be located. The insurer had no evidence of having received the form. The court of appeals acknowledged that Missouri recognizes the equitable doctrine of substantial compliance, and affirmed the trial court judgment because her intent to change the beneficiary was clear, and the evidence indicated that there were unusual circumstances preventing the insurer from receiving the form, which supported the trial court's application of the doctrine. *Id.* at 113.

In *Prudential Ins. Co. of America v. Kamrath,* 475 F.3d 920 (8th Cir.2007), Prudential brought an interpleader action against the insured's ex-wife and his estate as to who should receive the proceeds of a life insurance policy. The District Court granted judgment for the ex-wife as she was the beneficiary named on the policy, and the estate appealed. The opinion recites the efforts made by the insured in his apparent attempt to change the beneficiary, and states that under Missouri law a court may apply the equitable doctrine of substantial compliance to carry out the insured's intent where the insured has not strictly complied with the policy terms prescribing how to change a beneficiary. *Id.* at 924. The court stated that, as a general rule, this doctrine makes an incomplete change of beneficiary effective against the original beneficiary, citing *Anglen, supra.* However, in order to apply the doctrine, the insured's intent must be established beyond question, and the insured must have done everything possible under the circumstances to effectuate his intent to change the beneficiary. *Id.* (citing *Capitol Life v. Porter, supra,* and *Metropolitan Life Ins. Co. v. Barnes,* 770 F.Supp. 1393, 1397 (E.D.Mo.1991)).

The court further observed that the intent of the insured is a question of fact, and whether the insured had taken steps to effectuate the change is also a question of fact. *Id.* at 925. The court affirmed the judgment of the trial court, which determined that the insured's efforts did not meet the requirements of the substantial compliance doctrine, stating that what constitutes compliance will vary with the circumstances of each case. The court distinguished *Porter* and *Anglen* where severe illness prevented the decedents from doing more. *Id.*

■ A change of beneficiaries could have been accomplished without strict or complete compliance with the conditions of the policy regarding change, and the equitable doctrine of substantial compliance could have been applied where Dixie did not strictly comply with the method provided in the policy. Generally, her substantial compliance with the conditions of the policy would have been sufficient as Transamerica waived the lack of compliance by filing the interpleader action and paying the policy proceeds into court. However, the waiver was for the benefit of Transamerica; it did not confer rights between Gena and Pat. The substantial compliance doctrine would have carried out the intent of Dixie, had her intent been established beyond question, and had it been established that she did everything possible under the circumstances to effectuate the change.

The trial court found that Dixie attempted to change the beneficiaries by signing the Transamerica form without the signature of a witness; that she sent the form to Transamerica; that Transamerica returned it to her; and that Transamerica did not receive it back from her. It is undisputed that Pat was the beneficiary designated on Transamerica's records when Dixie died.

For Gena to have prevailed in the trial court on her claim that she is entitled to the proceeds of the policy, she must have proved beyond question that Dixie intended to change the primary beneficiary to her; and she must have proved that Dixie had done everything possible under the circumstances to effectuate her intent to change the beneficiaries. The mere fact that she signed the change of beneficiary form and sent it to Transamerica, without more, did not change the beneficiaries. Point I is denied.

■ In her related Point III, Gena claims that the trial court finding that Pat was entitled to the proceeds of the policy was not supported by substantial evidence and was contrary to the great weight of the evidence. The trial court judgment must be affirmed if there is substantial evidence to support it, it is not against the weight of the evidence, and it neither erroneously declares nor erroneously applies the law. Rule 73.01(c); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The party having the burden of proof is required to prove to the trier of fact the facts upon which the case depends by a preponderance or greater weight of the credible evidence. *Dills v. Dills*, 304 S.W.3d 738, 744 n. 5 (Mo.App.2010)(quoting *Lampe v. Franklin Am. Trust Co.*, 339 Mo. 361, 96 S.W.2d 710, 723 (1936)). The trial court is entitled to believe all, part, or none of the testimony of any witness, and this court defers to the trial court on issues of witness credibility. *Id.* at 741. Where the trial court does not include findings of fact in its judgment, the factual issues are assumed to have been found in accordance with the result reached. " 'The trial court judgment is presumed correct" and this Court affirms the judgment of the trial court "under any reasonable theory supported by the evidence.' " *Id.* (quoting *GMAC v. Crawford*, 58 S.W.3d 529, 532 (Mo.App.2001)). This court assumes that

the trial court found the facts in accordance with the judgment.

■ Gena testified at trial of her close relationship with Dixie and her efforts to assist her. She stated that Dixie spoke to her on several occasions about the policy, and told her that she was the primary beneficiary and Nancy was the contingent beneficiary. Dixie explained her reasons for the designation and told her what to do with the money from the policy. She recalled no conversation with Dixie about the return of the beneficiary form by Transamerica or any problems with the beneficiary designation. She did not see the Transamerica letter until after Dixie's death, when she discovered it sealed in the envelope among Dixie's personal papers. The envelope, the original letter, and the original form were not presented to the trial court.

Courtney Haynes, a first cousin of Gena, testified that Dixie talked to her twice about the policy and told her that she was going to change the beneficiaries from Coleman and Pat to Gena and Nancy. She further testified that Dixie explained her reasons for the change.

Pat also testified about her close relationship with Dixie, having grown up together in their parents' home with five siblings. She lived in Dixie's home from September 2003 until six months after Dixie died, and she told of how she helped take care of Coleman and assist Dixie. She said that her mail and Dixie's mail were kept separate, and that Dixie's mail would be on the kitchen table when she came in from work. Dixie would open her mail while they were at the kitchen table, and Dixie never got any mail that "she just threw by the way side," or mail that she didn't open, yet kept. Gena came to the house after Dixie's death and took Dixie's papers, but Pat knew nothing about a change of beneficiaries.

The credibility of the witnesses was for the trial court to determine, and it was free to believe the testimony of Pat and not believe the testimony of Gena and her witness. The trial court was not required to believe that the letter from Transamerica was still in Dixie's possession unopened when she died; and it could have believed that Dixie always opened her mail and never put it aside unopened. The trial court could also have believed that Dixie may have changed her mind, or that she became uncertain as to her intent to change the beneficiaries.

The trial court found that between February 21, 2007, and October 1, 2007, Dixie was fully capable of conducting her business affairs, and the court made no finding of any circumstances preventing her from effectuating a change of beneficiaries. It was not shown beyond question that it was Dixie's intent to change the beneficiaries, or that she had done everything possible under the circumstances to effectuate a change of beneficiaries. The trial court judgment was supported by substantial evidence; it was not contrary to the weight of the evidence; and it is presumed to be correct.

■ It is also asserted in Point III that the basis stated by Transamerica for refusing to accept the change of beneficiary form was pretextual. There is nothing in the record to support this assertion as Transamerica, upon returning the form, instructed Dixie how to complete the form and enclosed a return envelope for her use. In addition, Transamerica acted merely as a stakeholder and willingly paid the death benefit into court for payment to whoever was entitled to receive it. Point III is denied.

■ Gena also asserts that the trial court erred as a matter of law in finding that the attempt to change the beneficiaries was ineffective because ambiguity existed in the policy regarding change of beneficiary designations, in the change of beneficiary form, and in Transamerica's letter, as it was not clearly and unambiguously required that the signature of an insured be witnessed in order to change a beneficiary designation.

The policy provides, in part, that the "owner may change the beneficiary by filing a satisfactory written notice with us. A change of beneficiary will not be effective until recorded by us at our Administrative Office." The instructions for completing the Request for Policy Service state, "EACH SIGNATURE MUST BE WITNESSED BY A DISINTERESTED PARTY." Transamerica's letter told Dixie that a disinterested party must witness each signature and to "[p]lease sign the enclosed form where indicated by the red (X) and return in the envelope provided. Once the completed form is received, we will update the policy records."

■ " 'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions.' " *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010)(citing *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007)). In construing the terms of an insurance policy, the meaning applied is that which would be attached by an ordinary person of average understanding purchasing insurance. *Id.*

The policy provides that the beneficiary may be changed by filing a "satisfactory written notice," and that the change will be effective when recorded by the insurer. The request form instructs that all signatures must be witnessed, and the letter states that the signature must be witnessed. There is no duplicity, indistinctness, or uncertainty in the policy provision, and the request form and letter would mean to an ordinary insured of average

understanding that the change of beneficiaries would become effective when the form was returned with the signature of a witness. There is no ambiguity. This point is denied.

The judgment of the trial court is affirmed.

SCOTT, C.J., and LYNCH, P.J., concur.