# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1362

_____

|  |  |  |
|---|---|---|
| Virginia Cicle, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Chase Bank USA, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 15, 2008
Filed: October 6, 2009

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Chase Bank USA appeals from the order of the District Court denying its motion to stay litigation and to compel the arbitration of claims that Virginia Cicle brought in a lawsuit related to her Chase credit card. We reverse.

Cicle opened a credit card account with Chase, a national bank incorporated in and with its principal place of business in Delaware, in April 2002. At that time, she received in the mail at her residence in Missouri the credit card and a Cardmember Agreement that included a binding arbitration agreement and a class-action waiver. The Cardmember Agreement was revised, as permitted by the terms of the original Agreement and with notice to Cicle, several times over the next few years.

From January 1, 2004, through April 1, 2004, Cicle's Chase account carried a 7.99% annual percentage rate (APR) on unpaid balances. On her May 3, 2004, statement, Cicle noticed that the rate had increased dramatically, to 25.99%. She contends that she received no notice of this increase. Later in the year, in response to Cicle's inquiry, Chase advised her that a credit agency had reported her as past due on an unrelated loan or account, so Chase increased the APR from the 7.99% "Preferred Customer Pricing" rate. Cicle says she paid about $80 in higher finance charges as a result.

In November 2005, Chase sent Cicle a new arbitration agreement that replaced the one previously in effect. As with earlier amendments, Cicle was given the option of rejecting the change in writing, which would close the account to future charges. But she continued to use the card after the December 22, 2005, cutoff. By doing so, according to the terms of the agreement, Cicle accepted the amendments—whether or not she sent notice.

In 2007, Cicle filed a class-action lawsuit in Missouri state court alleging in two counts that Chase (1) imposed illegal penalties and (2) committed an unfair merchandising practice under the Missouri Merchandising Practices Act (MMPA). Chase removed the case to federal court under the Class Action Fairness Act of 2005 on the basis of diversity jurisdiction and federal question jurisdiction arising under the National Bank Act. Chase then filed a motion to stay the litigation and compel arbitration pursuant to the terms of the Cardmember Agreement:

> **ARBITRATION AGREEMENT:** PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION

AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

. . . .

**Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). . . .

. . . .

As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's

-3-

jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator will have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

. . . .

**Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

. . . .

**Severability, survival.** . . . If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

2005 Notice of Amendment to Cardmember Agreement at 3–6.

-4-

The District Court applied Missouri law and found the class-action waiver and the cost-sharing terms of the arbitration agreement to be unconscionable, but relied on the terms of the Cardmember Agreement to sever the class-action waiver as a non-essential term. The court conditionally granted Chase's motion to compel arbitration and stay litigation if Chase agreed to pay all costs and fees associated with the arbitration. Chase did not agree, so the District Court denied enforcement of the arbitration clause as unconscionable under Missouri law. Chase appeals and we reverse.

We review de novo both the District Court's choice-of-law determination and its ultimate decision to deny Chase's motion to compel arbitration. See St. Paul Fire & Marine Ins. Co. v. Bldg. Constr. Enters., 526 F.3d 1166, 1168 (8th Cir. 2008); EEOC v. Woodmen of the World Life Ins. Soc'y, 479 F.3d 561, 565 (8th Cir. 2007).

Chase first argues that the District Court erred in applying Missouri law in the face of a choice-of-law clause set forth in the Cardmember Agreement. The applicable "GOVERNING LAW" paragraph of the 2004 amendment to the Cardmember Agreement reads as follows:

> THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007). Under Missouri law, a choice-of-law clause in a contract generally is enforceable

unless application of the agreed-to law is "contrary to a fundamental policy of Missouri." Kagan v. Master Home Prods. Ltd., 193 S.W.3d 401, 407 (Mo. Ct. App. 2006). The District Court held that the binding arbitration provision and the class-action waiver, if enforced under Delaware law, would be contrary to a fundamental policy of Missouri. Chase argues that the court's choice-of-law analysis was flawed and urges reversal on that ground. We find it unnecessary to resolve the choice-of-law question, however, because we would reverse the District Court whether we apply the law of Missouri or Delaware. See Kamrath, 475 F.3d at 924 (declining to decide choice-of-law issue where that decision would have no impact on the outcome of the case). The parties seem to agree that the application of Delaware law would be dispositive in favor of Chase. Because the application of Missouri law presents a closer case, we will proceed with our analysis as if Missouri law applied.

Under the Federal Arbitration Act, a written arbitration agreement such as the one at issue here "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 reflects congressional intent "to overcome judicial hostility to arbitration agreements." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272 (1995). But it also "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision," if the contract violates state law. Id. at 281. "What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." Id. Doubts are resolved in favor of arbitrability. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24–25 (1983). But general contract defenses, such as unconscionability, "may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). The District Court held that the Chase agreement to arbitrate is unconscionable under Missouri law.

Before a contract will be deemed unenforceable on the grounds of unconscionability, a court applying Missouri law must find it both procedurally and substantively unconscionable. Whitney v. Alltel Commc'ns, Inc., 173 S.W.3d 300, 308 (Mo. Ct. App. 2005). Missouri cases suggest that the two aspects should be considered together and balanced, so "that if there exists gross procedural unconscionability then not much be needed by way of substantive unconscionability" and vice versa. Id. (quoting Funding Sys. Leasing Corp. v. King Louie Int'l, Inc., 597 S.W.2d 624, 634 (Mo. Ct. App. 1979)). An examination of contract formation—the process—is necessary to determine whether an agreement is procedurally unconscionable. Id. For substantive unconscionability, we consider the terms of the contract itself. Id. We look at the totality of the circumstances on an objective basis, considering the reasonable expectations of the average person entering into such an agreement. Id. at 310. "Missouri courts have described an unconscionable agreement as one in which 'no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other,' or one where there is 'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" Pleasants v. Am. Express Co., 541 F.3d 853, 857 (8th Cir. 2008) (quoting Smith v. Kriska, 113 S.W.3d 293, 298 (Mo. Ct. App. 2003) and omitting internal quotations). We consider first the extent to which the arbitration agreement at issue here is procedurally unconscionable.

It is true, as the District Court noted, that the terms of the agreement were in fine print, but the arbitration provision was in the same size font as the rest of the 2005 notice of amendment. And in the original Cardmember Agreement, as well as the 2005 amendment that Chase seeks to enforce here (relevant parts of which are quoted above), the arbitration agreement and class-action waiver were introduced by a bold-faced heading and a paragraph in all-uppercase font explaining the litigation rights that were being waived by acceptance and use of the card. See id. at 859 ("[T]here are not strong indicia of procedural unconscionability, given the conspicuous manner in

which the class-action waiver appeared."). The notice specifically stated in the "Summary of Changes" section that the arbitration agreement was being amended and suggested that the cardholder review the changes. An agreement to arbitrate and a class-action waiver were always a part of Cicle's agreement with Chase and were not foisted upon an unwary consumer only after she had begun using the card. Cf. Whitney, 173 S.W.3d at 310 (finding procedural unconscionability where, among other things, the arbitration provision was sent to a wireless telephone customer five years after he originally contracted with the provider and appeared "in fine print on the back side of a sheet sent . . . with his regular bill").

When Cicle received the 2005 notice of amendment, she had thirty days to reject the changes in writing, which would close her account. Cicle contends that the revised arbitration agreement is therefore a negative option, "an offer that is deemed to be accepted by a failure to respond," and therefore unconscionable. Br. of Appellee at 29. We disagree. Cicle had ample opportunity and time to opt out of the amendment before it took effect, but instead she continued to use the card. By doing so, according to the terms of the notice, she affirmatively accepted the amendment.

We recognize, as we must, Chase's superior bargaining position and the lack of opportunity in the ordinary course for negotiation between consumer and bank in the application for a credit card. But there is no evidence that Chase engaged in "high-pressure sales tactics to coerce" Cicle into entering into the Cardmember Agreement. Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009). These sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt. "Because the bulk of contracts signed in this country are form contracts—'a natural concomitant of our mass production-mass consumer society'—any rule automatically invalidating adhesion contracts would be 'completely unworkable.'" Swain v. Auto Servs., Inc.,

128 S.W.3d 103, 107 (Mo. Ct. App. 2003) (quoting Hartland Computer Leasing Corp. v. Ins. Man, Inc., 770 S.W.2d 525, 527 (Mo. Ct. App. 1989)). The agreement at issue here is not so procedurally unconscionable as to render it unenforceable unless the agreement is grossly unconscionable in substance. We consider that aspect next.

The District Court concluded that the class-action waiver and the cost-sharing provisions within the arbitration agreement are unconscionable, making the overall agreement substantively unconscionable. Because Cicle's actual damages (and those of others who have allegedly been wronged by the actions of Chase that are at issue in this case) are small, the court found, relying largely on the Missouri Court of Appeals opinion in Whitney, that Cicle and those similarly situated would have no effective remedy if the arbitration agreement were enforced without severing the waiver. See Whitney, 173 S.W.3d at 309 ("Prohibiting class treatment of these claims would leave consumers with relatively small claims without a practical remedy . . . ."). But the Chase arbitration agreement is distinguishable in several respects from the one challenged in Whitney. As relevant here, the Chase agreement specifically provides an exception to binding arbitration: Cicle may file her claim individually in small claims court, which would afford her a relatively inexpensive, quick, and easy adjudication. Small claims court provides "a practical remedy"—an alternative venue for vindication of Cicle's rights with a judicial process specifically designed for claims like hers.

The District Court also determined that the class-action waiver "violates Missouri's fundamental policy," as reflected in the MMPA, "to protect the public from deceptive merchandising practices." Order at 9. We think that overstates the case. The MMPA **allows** for class actions, see Mo. Rev. Stat. § 407.025.2, but does not suggest that public policy favors class actions or that the wrongs sought to be remedied by the MMPA would continue unabated without the availability of class actions. Further, it is important to note that the arbitration agreement at issue here, unlike the one in Whitney, limits neither Chase's liabilities nor Cicle's remedies under

the MMPA. See Pleasants, 541 F.3d at 858 (upholding enforceability of class-action waiver in arbitration agreement in case brought under the Truth in Lending Act, under which "a prevailing plaintiff may recover attorney's fees, costs, statutory damages (up to $2,000), and actual damages"). Under the MMPA, Cicle may be awarded punitive damages, attorney's fees, and equitable relief. See Mo. Rev. Stat. § 407.025.1. And the arbitration agreement makes no attempt to limit the amount or types of damages that an arbitrator may award or to bar any available legal or equitable remedy. We hold that the District Court erred in severing the class-action waiver from the agreement to arbitrate.

As for costs, according to the agreement, both parties are to bear their own costs, except the agreement leaves open, at the arbitrator's discretion and in keeping with the applicable law, the possibility of shifting all costs, regardless of which party prevails. According to the District Court, Cicle and others similarly situated "must risk incurring significant costs without the resulting opportunity for payout." Order at 15. But under the terms of the agreement, Chase will reimburse Cicle up to $500 for the initial arbitration filing fee and will pay the arbitrator's and arbitration administrator's fees for two days of hearings. In addition, Chase "will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so."

The District Court concluded that the cost- and fee-sharing provisions of the agreement are insufficient to save the agreement from unconscionability because Cicle **could** be responsible for the payment of substantial costs and fees if she goes forward with an individual arbitration. In support of this position, the court relied on an affidavit Cicle filed with her motion for summary judgment that enumerates costs associated with a class-action arbitration in another matter. The court posited, based on the affidavit, that two days "is not long enough to conduct a class arbitration" and that "it is likely the arbitrator will charge a considerable hourly fee before there are

-10-

any hearings in the matter." Order at 15. Cicle also argues that even if she were to prevail in arbitration, Chase could appeal, according to the terms of the agreement, to a panel of three arbitrators, and run up her costs even more.

We disagree with the District Court's determination that the agreement to arbitrate is substantively unconscionable because of the potential that Cicle could be obligated to pay excessive costs and fees. The cost-sharing and cost-shifting provisions in the arbitration agreement save it from being unconscionable on its face. And the record does not support the court's conclusion that the costs and fees associated with arbitration of Cicle's individual claim make the agreement unconscionable as to her. Because Cicle "seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, [she] bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.–Al. v. Randolph, 531 U.S. 79, 92 (2000). In Green Tree, the Supreme Court held that an arbitration agreement's silence as to who would bear the costs of arbitration and the plaintiff's unsupported assertion of "high" costs and her inability to pay them made the risk that arbitration would be cost-prohibitive for plaintiff "too speculative to justify the invalidation of an arbitration agreement." Id. at 90 & n.6, 91. In this case, Cicle "has not provided the evidence necessary to estimate the length of the arbitration and the corresponding amount of arbitrators' fees (e.g. sophistication of the issues, average daily or hourly arbitrator costs in the region)" for an individual arbitration. Faber v. Menard, Inc., 367 F.3d 1048, 1054 (8th Cir. 2004). The only cost information Cicle has produced cannot support a legal conclusion of unconscionability because it is purely speculative or relates to a class, not an individual, arbitration of a different matter.[1]

---

[1]We recognize that the District Court relied on the affidavit when considering the cost issue because the court had severed the class-action waiver from the arbitration agreement and apparently assumed that the action would proceed as a class arbitration with Cicle as named plaintiff.

In sum, the District Court erred in holding that the arbitration agreement as written is so substantively unconscionable that when considered with any procedural unconscionability inherent in the agreement, it is unenforceable.

Although it may be tempting, we cannot allow the unfair credit card practices alleged in Cicle's claims against Chase (some of which are now or will soon be illegal) to color our analysis of the unconscionability of the arbitration provision to which Cicle agreed. We hold that Cicle has not shown that the agreement is so unconscionable under Missouri law that it should not be enforced. Accordingly, we reverse the judgment of the District Court and remand with instructions to enter an order granting Chase's Motion to Compel Arbitration and to Stay Litigation.

_____